Mike P. LAWSON

v.

David MATHEWS, Secretary of Health, Education and Welfare.

Civ. No. 3–75–48.

United States District Court, E. D. Tennessee, N. D.

Nov. 4, 1975.

**1284**

J. Gregory O'Connor, Knoxville, Tenn., for plaintiff.

Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Before the Court are cross motions for summary judgment on behalf of the respective parties. Plaintiff seeks black lung benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* (Supp.1975).

Plaintiff filed an initial application for benefits on May 26, 1970, but his claim was denied because he continued his usual work in the nation's underground coal mines. (Tr. 21–25). A second application was filed on May 15, 1972, and this claim was also denied after being reconsidered under the more liberal provisions of the 1972 amendments to the Act. (Tr. 27–33). Plaintiff was given a de novo review of his claim by a Hearing Examiner, and his claim was denied once again.[1] On January 16, 1975, after considering additional evidence, the Appeals Council reviewed the findings of the Hearing Examiner and affirmed his decision on somewhat different grounds. (Tr. 5–8). This became the final decision of the Secretary. (Tr. 4).

### Facts

Plaintiff was born in 1918 and has an eighth grade education. He worked in the nation's underground coal mines for some thirty-four years as a shuttle car operator and jack setter. He ceased working in the mines on September 9,

---

1. Plaintiff waived his right to appear personally before the Hearing Examiner. (Tr. 20).

1973, because of his "lung condition." (Tr. 38, 69–70).

## Medical Evidence

Doctor Dukes, a certified reader of coal miner's chest X-rays, found no radiographic evidence of pneumoconiosis and found the plaintiff's chest to be normal on March 12, 1971. (Tr. 41). Dr. Castillo, an internist, interpreted the results of a ventilatory function study performed on April 12, 1973. He found the miner to be 65 inches tall with a $FEV_1$ of 1.836 liters and a MVV of 50.4 1/min. (Tr. 43).[2] Dr. Dukes interpreted an X-ray taken on May 24, 1973, as being completely negative for pneumoconiosis. (Tr. 48).

Doctor Swann, a thoracic surgeon, examined the miner on September 24, 1973. The miner stated to Dr. Swann that he suffered shortness of breath, a chronic productive cough, blood spitting and chest pains. Dr. Swann noted that a chest X-ray revealed small rounded opacities in the lungs, "category P–1/1 according to the U/C classification."[3] (Tr. 50). A pulmonary function study revealed a $FEV_1$ of less than 1 liter and a MVV of 37 1/min.[4] Id. Dr. Swann's impression was coal worker's pneumoconiosis and chronic obstructive pulmonary disease.

The Appeals Council considered the results of a ventilatory function study completed February 21, 1974, by Dr. Sullivan. The miner's height was listed as 66 inches and the $FEV_1$ was observed to be 1.508 liters and the MVV was observed to be 33 liters/min.[5]

## The Claim

The Secretary made the following findings with respect to the period prior to July 1, 1973:

2. These values are less than the table values under the interim adjudicatory rules. See 20 C.F.R. § 410.490(b)(1)(ii).

3. This is acceptable as evidence of simple pneumoconiosis. 20 C.F.R. § 410.428.

4. These values are less than the table values under both the permanent and interim criteria.

"1. The evidence fails to establish that the claimant has 'complicated pneumoconiosis,' as described in section 411(c)(3) of the Act. [30 U.S.C. § 921(c)(3)].

"2. The claimant was regularly employed in his usual job in the coal mining industry through June 30, 1973.

"3. The evidence of record fails to establish that the claimant was disabled due to pneumoconiosis on or before June 30, 1973." (Tr. 8).

▇ Plaintiff contends that the Secretary erred by not considering whether plaintiff became totally disabled at some time after June 30, 1973. We cannot agree. Under the provisions of the Act a miner must have filed a claim and met the requirements for benefits prior to June 30, 1973, in order for the Secretary to be responsible for payment of benefits. See 30 U.S.C. § 924(b); 20 C.F.R. § 410.226(b); Hunley v. Weinberger, 403 F.Supp. 374 (E.D.Tenn.1975). As will be discussed infra, plaintiff had not met the requirements for benefits on June 30, 1973, and the Secretary therefore did not have jurisdiction to determine plaintiff's alleged disability subsequent to that date, such jurisdiction having shifted to the Department of Labor. See 20 C.F.R. §§ 720.108, 720.109 (1975).

▇ There is substantial evidence to support the Secretary's finding that plaintiff does not suffer from "complicated pneumoconiosis" since all of the evidence of record indicates that at most plaintiff's condition has been diagnosed as simple pneumoconiosis. See 20 C.F.R. §§ 410.418, 410.428.

▇ There is also substantial evidence to support the Secretary's finding that plaintiff was not totally disabled due to pneumoconiosis on or before June 30,

20 C.F.R. § 410.426(b), 410.490(b)(1)(ii). Spirometric tracings of this study were not incorporated in the file as required by the regulations. 20 C.F.R. § 410.430.

5. These values are less than the table values under both the permanent and interim criteria. 20 C.F.R. §§ 410.426(b), 410.490(b)(1)(ii).

1973. Even if the results of the April 12, 1973, ventilatory function study are construed as raising the interim presumption of total disability, this was effectively rebutted by evidence that plaintiff was doing his usual coal mine work on June 30th. *See* 20 C.F.R. §§ 410.490(b)(1)(ii); 410.490(c)(1).[6] Plaintiff's earning record through the second quarter of 1973 indicates that he was engaged in his usual coal mine work through June of that year. Furthermore, there is no evidence of record that plaintiff was totally disabled on or before June 30, 1973, and "through sheer determination" continued to work in the mines. *Farmer v. Weinberger,* 519 F.2d 627 (6th Cir. 1975). We express no view on the issue of whether plaintiff was totally disabled due to pneumoconiosis at any time subsequent to June 30, 1973.

For the reasons indicated above, the Secretary's motion for summary judgment is sustained.

Order accordingly.

---

**6.** It appears that the Secretary properly considered evidence of pneumoconiosis adduced after June 30, 1973, for whatever probative value it might have on total disability on or before that date. *See Hunley v. Weinberger,* 403 F.Supp. 374 (E.D.Tenn.1975).